| | |
|---|---|
| **DISTRICT COURT, COUNTY OF EL PASO, COLORADO** <br> P.O. Box 2980 <br> Colorado Springs, CO 80903 <br> Phone: (719) 452-5000 | |
| **Sadatur Khan, Jason Harsha, Tyler Kelley, Kelly Robinson and Bailey Carpenter,** <br><br>     **Plaintiff,** <br><br> **vs.** <br><br> **Peter Carey, in his Official Capacity as Chief of Police for the City of Colorado Springs** <br><br> **and** <br><br> **The City of Colorado Springs,** <br><br>     **Defendants.** | _____ <br> Case Number: <br><br> Division: |
| Donna Dell'Olio #10887 <br> Ian D. Kalmanowitz #32379 <br> Bradley J. Sherman #39452 <br> CORNISH & DELL'OLIO, P.C. <br> 431 N. Cascade Avenue <br> Colorado Springs, CO 80903 <br> Phone: (719) 475-1204 <br> Fax: (719) 475-1264 | |
| **COMPLAINT** | |

The Plaintiffs, Sadatur Khan, Jason Harsha, Tyler Kelley, Kelly Robinson and Bailey Carpenter, by counsel, submit the following as their Complaint against the Defendants:

### INTRODUCTION

1. This is an action pursuant to 42 U.S.C. § 1983 for enforcement of rights secured by the Due Process clause of the United States Constitution. This Complaint seeks

1

**Exhibit 1**

equitable relief, a temporary and permanent injunction restoring Plaintiffs to their positions as Recruits in the 66th Recruit Class Training Academy and back pay.

## PARTIES

2.      Plaintiffs were recruits, participating in the Colorado Springs Police Department's 66th Training Academy until their employment was involuntarily terminated.

3.      Jason Harsha is a military veteran who served in the United States Army for 11 years, serving in the 759th Military Police Battalion as a Military Police Squad Leader. During his service he was deployed and served two tours in Iraq. He was rated among the top three recruits throughout the Academy.

4.      Tyler Kelley is a military veteran and served in the United States Army, 2-12 Infantry Battalion as a combat medic. He was deployed to Afghanistan.

5.      Kelly Robinson is a military veteran and served in the Navy for 7 ½ years. He served with Security Forces at NAS North Island as a police for 3 years. During his service he was deployed to the Arabian Gulf. He was ranked 9th in the Academy and his test scores averaged over 90%.

6.      Sadatur Khan is a military veteran. He served in the United States Army for 5 ½ years. He served in the 1-30 Infantry Battalion and the 1-8 Infantry Battalion as a tank system maintainer. During his service he was deployed to Afghanistan. His average test scores at the Academy were over 80%.

7.      Bailey Carpenter was ranked first in the 66th Recruit class when her employment was terminated. She is married to an active duty Airman.

2

**Exhibit 1**

8. Peter Carey is the Chief of Police of the City of Colorado Springs who by authority given him by the City Charter and by delegation by the Mayor has authority, as limited by the City Charter, to appoint and retain police officers including Recruits.

9. Peter Carey as Chief of Police of the City of Colorado Springs is the highest policy making official of the Colorado Springs Police Department.

## ALLEGATIONS

10. All of the Plaintiffs were admitted to the Colorado Springs Police Department's 66th Recruit Class Training Academy in October, 2016, after passing a written test, a physical abilities test, an oral board, a lie detector test, a psychological evaluation and a background investigation.

11. The Plaintiffs competed against over 2000 applicants for one of 48 seats at the Training Academy.

12. Each of the Plaintiffs completed either 17 or 18 weeks of the Academy before being terminated.

13. All of the Plaintiffs were classified employees, as defined by Civil Service Rules of the City of Colorado Springs at the time their employment was terminated because they were eligible to, and did participate in the Police and Fire Pension Fund by having contributions deducted from their paychecks.

14. The Colorado Peace Officers Standards and Training Board (P.O.S.T.) is established by Colorado Statute within the Department of Law. Its functions include the certification of police training academies and promulgation of rules "fair, impartial and

3

**Exhibit 1**

nondiscriminatory" for the "…certification of applicants to serve as peace officers." Section 24-31-303(1)(a)(g) and (m).

15.     Pursuant to its statutory authority Colorado P.O.S.T. has promulgated rules for skills testing of Academy participants, including the "Law Enforcement Driving Program" of a P.O.S.T. certified police training academy.

16.     The Colorado Springs Police Department operates a P.O.S.T. certified Training Academy.

17.     The P.O.S.T standard for successful completion of the Law Enforcement Driving Program in a certified Police Academy is "seventy percent (70%)." Exhibit 1. P.O.S.T Rule 24, (a)(VI) Skills Training Safety and Skills Program Requirements for Basic and Reserve Academies.

18.     P.O.S.T. Standards provide that police academies may adopt higher standards for the Law Enforcement Driving Program only if the higher standard is described in the Trainee Manual. P.O.S.T. Rule 24, (a)(VI)(2).

19.     The Colorado Springs Police Department 66th Recruit Class Trainee Manual does not describe any standard for passing the driving skills test. Exhibit 2, Trainee Manual.

20.     On February 3, 2017 the Training Academy began the Law Enforcement Driving Program module.

21.      The Recruit Class was divided into two groups, Group A and Group B.

22.     On February 3, 2017 both groups began the Driving Skills module with one day of classroom instruction.

23.	On February 6, 2017 Group A began the driving instruction part of the Law Enforcement Driving Program module.

24.	The driving instruction consisted of practicing on a course that had been set up at Pikes Peak International Raceway.

25.	The course consisted of a reverse serpentine, forward serpentine, two ninety degree turns, three high speed lane changes, threshold braking, shuffle steering, brake and turn, 40 mph diminishing curve and Baird's decision.

26.	The course was set up within the raceway and was defined by hundreds of cones.

27.	The course was set up so that different stations were judged by different Instructor/Observers who would observe whether the Recruit passed each station successfully.

28.	The Instructor/Observers would text to the officer in charge of the driving skills testing, Officer Tracy Thompson, whether the Recruit successfully passed the station. There were six Instructor/Observers on the raceway as each Recruit was tested.

29.	Recruits were provided three days of training to practice the course and were provided three chances to pass the driving skills test.

30.	During the three days of driver testing at Pikes Peak International Raceway weather conditions were very windy.

31.	During the three days of driver training Recruits observed Instructors knocking over cones when practicing on the course.

**Exhibit 1**

32. Recruits were never provided any standard in writing during the Academy which stated what was required of them to pass the driving test. The test was represented to be a timed test but the Recruits were never told what the time limit was for completing the course and were not allowed to wear watches.

33. Recruits were told verbally that they must complete the course without "hitting" a cone. They were not provided any further information in response to their questions about how it would be determined whether they "hit" a cone, for example whether it would be deemed "hit" if the cone was not knocked over or moved.

34. On Bailey Carpenter's first test she hit one cone on the high speed lane change. On her second attempt she hit one cone in the high speed lane change. On her third attempt by her own observation she completed the course without hitting a cone.

35. Bailey Carpenter was told by Officer Thompson after her third test that she had failed because an Instructor/Observer reported that she had "moved" a cone.

36. Bailey Carpenter passed the driving test based on her own observations as well as the P.O.S.T standards which do not require a perfect score and require a 70% or greater score.

37. On Kelly Robinson's first test he was told that he hit a cone on the 90/90 station. On his second attempt he hit a cone on the high speed lane change. The third time he took the test he was told that he "wobbled" a cone during the high speed lane change. His vehicle was traveling 40 mph during the high speed lane change and he does not believe that his vehicle hit a cone.

**Exhibit 1**

38.     Kelley Robinson passed the driving test based on his own observations as well as the P.O.S.T standards which do not require a perfect score and require a 70% or greater score.

39.     On Tyler Kelley's first test he hit one cone on the 90 degree turn. On his second test he knocked down one cone in the high speed lane change. On the third test it was extremely windy and he could not determine whether or not his vehicle knocked down a cone.

40.     Tyler Kelley passed the driving test based the P.O.S.T standards which do not require a perfect score and required a 70% or greater score.

41.     On Sadatur Khan's first attempt he hit one cone on the high speed lane change. On his second attempt he did not hit a cone. He did not hear anything that would indicate that he hit a cone and he could see the cones standing in a line in his rearview mirror after he completed each station. The Instructor in the vehicle with him confirmed that he had passed the test. Another Observer claimed that he had "wobbled" a cone at the high speed lane change.

42.     Sadatur Khan passed the driving test based on his own observation and the P.O.S.T standards which do not require a perfect score and require a 70% or greater score.

43.     The first time Jason Harsha took the test he hit a cone on the high speed lane change. The second time he hit a cone on the high speed lane change. On February 17th at approximately 9:30 a.m. he took the test for the third time. By his own observation he passed he passed. He was told by Instructor Thompson that he passed.

7

**Exhibit 1**

He was given a document to sign that stated that he passed. Four days later he was told that he failed.

44.   Jason Harsha passed the driving test based on his own observation and the observations of others and the P.O.S.T standards which do not require a perfect score and require a 70% or greater score.

45.   After each of the Plaintiffs completed each test, including the tests which they passed by their own observation they were required by Training Academy staff to sign a document apparently acknowledging that they failed. In some cases the document was in a folder so that the Recruit could not see what was written on the document and could only see the signature line.

46.   Four of the Plaintiffs were told at the end of the day of their third test by Sgt. Frabbiele that they had hit a cone and did not meet the Academy standard and that they would likely be fired or have the option to resign. Sgt. Frabbiele stated that the Training Academy staff would recommend separation due to failing the test three times. He told them that the Chief had the final say.

47.   Harsha was told by Frabbiele said that he had "touched" a cone during the driving test the prior Friday and that Frabbiele was going to recommend that he be dismissed from the Academy.

48.   None of the Plaintiffs were given an opportunity to respond to the charges by Sgt. Frabbiele.

49.   All of the Plaintiffs were offered resignation in lieu of termination.

50.   Four of the Plaintiffs resigned after being told that:

**Exhibit 1**

a) If they resigned the Academy would maintain their records at the Academy and that they would be allowed to reapply in the future. Harsha interpreted this to mean that if he didn't resign he would not be allowed to reapply and his records would not be maintained.

b) If they did not resign they would be terminated.

c) They would not lose any rights if they resigned and that they would maintain their records if they resigned and that if they were terminated the termination would be on file with Internal Affairs. These statements were made by Heather Edwards the Director of Human Resources to the Plaintiffs.

51. Sadatur Khan did not resign and his employment was terminated.

52. The Instructor/Observers did not apply a consistent interpretation to the verbal rule that a Recruit could not hit a single cone.

53. Some Instructor/Observers failed Recruits who "wobbled" a cone.

54. Some Instructor/Observers failed Recruits who "moved" a cone.

55. At least one Instructor/Observer passed a Recruit whose vehicle touched a cone and lifted the side of the cone off the ground.

56. All actions taken by Training Academy staff, including Thompson and Frabbiele, to enforce unwritten standards for passing the Driving Skills Test were taken pursuant to authority delegated to them by Chief Carey.

**Exhibit 1**

57. All actions taken by Training Academy staff, including Thompson and Frabbiele, to terminate the employment of the Plaintiffs without hearing or opportunity to respond were taken pursuant to authority delegated to them by Chief Carey.

58. The unwritten standard adopted by the Training Academy was applied inconsistently to terminate the employment of Recruits.

59. The actions of the Training Academy staff as described above were arbitrary, because the standard was not defined and was applied inconsistently and arbitrarily.

### First Cause of Action-42 U.S.C. § 1983-Denial of Due Process Under the Fourteenth Amendment to the United States Constitution

60. Paragraphs 1 through 59 are incorporated herein.

61. At all times relevant to the Complaint the Training Academy staff of the Colorado Springs Police Department were acting under color of State law.

62. Plaintiffs possessed a property interest their employment with the City of Colorado Springs.

63. Plaintiffs had a right to a pre deprivation hearing before their employment was terminated.

64. Plaintiffs were deprived of their property when their employment was involuntarily terminated.

65. Plaintiffs never received a hearing or opportunity to respond to the charge that they had failed the skills driving test.

66. Plaintiffs never made a knowing, intelligent and voluntary waiver of their right to a due process hearing before they were deprived of their property.

**Exhibit 1**

67. Plaintiffs were denied due process when an arbitrary standard was inconsistently applied to evaluate their performance and terminate their employment.

68. As the result of Defendants' actions Plaintiffs have suffered damages.

## Prayer for Relief

Plaintiffs pray that the Court grant the following relief:

a. An award of equitable relief including a preliminary and permanent injunction ordering Plaintiffs' reinstatement to the 66th Recruit Class Training Academy.

b. An award of monetary damages for the deprivation of property.

c. Attorney's fees and costs.

d. Such other relief as the Court deems just and equitable.

A Jury Trial Is Demanded For those Claims Triable to a Jury.

Respectfully submitted this 10th day of March, 2017.

CORNISH & DELL'OLIO, P.C.

s/ Donna Dell'Olio
Donna Dell'Olio, #10887
Ian D. Kalmanowitz #32379
Bradley J. Sherman #39452
Cornish & Dell'Olio, P.C.
431 N. Cascade Avenue, Ste. 1
Colorado Springs, CO 80903
TEL (719) 475-1204
FAX (719) 475-1264
Email: ddellolio@cornishanddellolio.com
ikalmanowitz@cornishanddellolio.com
bsherman@cornishanddellolio.com
Attorney for Plaintiffs

**Exhibit 1**